UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARISOL RUIZ, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 24 C 3587 |
| v. | ) |
| | ) Hon. Sara L. Ellis |
| LABORATORY CORPORATION OF AMERICA, a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Marisol Ruiz sued Defendant Laboratory Corporation of America ("LabCorp") after it allegedly unlawfully terminated her for making multiple reports of workplace misconduct. In her complaint, Ruiz brings statutory claims of retaliation and threat of retaliation under the Illinois Whistleblower Act ("IWA") (Counts I and II), 740 Ill. Comp. Stat. 174/20.1 and 20.2 *et seq.*, a common law retaliation claim (Count III), a breach of contract claim (Count IV), and a promissory estoppel claim based on an alleged promise contained in LabCorp's Code of Conduct (Count V). LabCorp now moves to dismiss Ruiz's complaint for failure to state a claim under Rule 12(b)(6).[1] Because the Court agrees that Ruiz's complaint fails to state a claim for relief, it grants LabCorp's motion and dismisses Ruiz's complaint.

---

[1] Ruiz voluntarily dismissed her breach of contract claim in her response to LabCorp's motion to dismiss. Doc. 22 at 13. Accordingly, the Court dismisses this claim without prejudice and does not discuss it further in this Opinion.

1

## BACKGROUND[2]

Ruiz worked at LabCorp as a phlebotomist. Prior to her termination, Ruiz reported multiple alleged acts of workplace misconduct to LabCorp. Ruiz reported that her supervisor was "playing favorites" with other employees who were never disciplined for arriving to work late or leaving early. Doc. 1 ¶ 15. Ruiz complained that the same supervisor was verbally abusive to her, withheld extra working hours from her, and allegedly falsely informed her that "working extra . . . was a privilege for employees who work their scheduled hours." *Id.* ¶¶ 39–40. Ruiz also reported that her coworkers smelled of alcohol or marijuana, that she saw a coworker smoke marijuana in LabCorp's parking lot during working hours, that she found a used marijuana container near the same coworker's workstation, and that a coworker brought a firearm to work.

One of the coworkers against whom Ruiz filed a report later informed LabCorp that Ruiz falsified her time entries by having another employee remotely log in for her. LabCorp allegedly terminated Ruiz for falsifying her time entries after investigating this coworker's report. Ruiz complained that her supervisor knew that employees routinely would log in on behalf of other employees, that her supervisor never warned or disciplined her previously for doing so, and that other employees were doing the same without any consequences. Ruiz claims that LabCorp actually terminated her in retaliation for reporting on the misconduct of her co-workers.

Ruiz says that she made her reports because LabCorp has a drug- and alcohol-free policy, and that she relied on statements within LabCorp's Code of Conduct (the "Code") that the

---

[2] The Court takes the facts in the background section from Ruiz's complaint and presumes them to be true for the purpose of resolving LabCorp's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

company encourages employees to report concerns about ethics or compliance "without fear of retaliation," Doc. 12-1, at 4, that it "prohibits retaliation in any form," *id.* at 5, and that its leaders are to "not retaliate or condone retaliation against anyone for sharing concerns in good faith or supporting an investigation," *id*. at 4. The Code urges that employees "must all work to take prompt and consistent action against violations of this Code or applicable law." *Id*. The Code describes itself as a "guide" that provides a "flexible framework" to promote an ethical culture and to provide some general guidelines so that it could help address a variety of matters. *Id.* at 3–4. It also promises that "those who violate [it] will be subject to disciplinary action as LabCorp deems appropriate, up to and including discharge from LabCorp, and, potentially, civil liability and criminal prosecution." Doc. 1 ¶ 117.[3]

After LabCorp terminated Ruiz, she applied to the Illinois Department of Employment Security ("IDES") for unemployment benefits. LabCorp challenged Ruiz's application for benefits on the grounds that it lawfully discharged her.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

---

[3] Although this phrase does not appear in the excerpts of the Code that LabCorp provided, it can be found on page 3 of the full version of the Code, available online. *See Labcorp Code of Conduct and Ethics* at 3, https://ir.labcorp.com/static-files/ab6a66d9-d4a8-4fb0-a6e6-ca75c3778153.

3

*Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.      IWA Claims (Counts I and II)**

Ruiz first contends that LabCorp violated Section 20.1 and Section 20.2 of the IWA by firing her and contesting her unemployment benefit application because of her reports of workplace misconduct. Section 20.1 provides that an employer commits retaliation if it acts in a way that "would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 Ill. Comp. Stat. 174/20.1. In turn, Section 20.2 prohibits an employer from "threaten[ing] any employee" with an act that "would constitute retaliation against the employee." 740 Ill. Comp. Stat. 174/20.2.

To avail herself of the IWA's protections, however, Ruiz must qualify as a "whistleblower" within the law's meaning. The IWA only protects "an employee who discloses or threatens to disclose to a public body conducting an investigation, or in a court, an administrative hearing, or any other proceeding initiated by a public body, information related to an activity, policy, or practice of the employer." 740 Ill. Comp. Stat. 174/15(a). The requirement that an employee must have "brought their concerns regarding illegal activities at work to some government agency" to qualify for statutory anti-retaliation protection is iron-clad. *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051, 1055 (N.D. Ill. 2007). An employee cannot sue under the IWA if he or she "reveals information only to his or her employer." *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, No. 10 C 154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12,

2010); *see also Riedlinger*, 478 F. Supp. 2d at 1055 ("Where an employee has revealed this information only to his or her employer, there is no cause of action in Illinois for retaliatory discharge."). In other words, to "state a claim for retaliatory discharge under IWA, the employee must do more than merely voice his suspicion of unlawful conduct–[s]he must actually report the suspected violation of state or federal law to authorities." *Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 865 (N.D. Ill. 2015).

In her response, Ruiz acknowledges that she did not report the alleged workplace misconduct to any regulatory agency or government body prior to her termination. Doc. 22 at 4. This dooms her IWA claims. Although Ruiz claims that she subsequently told IDES that LabCorp fired her because she reported workplace misconduct and LabCorp then objected to her unemployment benefits—thereby transforming her unemployment claim into a "public wrongdoing" that occurred "in a public forum," *id.* at 5—the fact remains that she never reported any wrongdoing to any public entity *before* LabCorp terminated her, *see Riedlinger*, 478 F. Supp. 2d at 1055. Accordingly, Ruiz is not a whistleblower whom the IWA protects and thus fails to state a claim for any alleged violations of the law.[4]

Therefore, the Court dismisses Ruiz's IWA claims with prejudice because amendment would be futile. *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F. Supp. 2d 824, 829 (N.D. Ill. 2010) ("Amendment is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.").

## II. Common Law Retaliatory Discharge (Count III)

Ruiz also complains of common law retaliatory discharge. In Illinois, employment is typically "at will," meaning that the employer may discharge an employee "for any reason, or no

---

[4] Ruiz's arguments based on the Unemployment Insurance Act are unpersuasive for the simple reason that she does not bring Counts I and II pursuant to that law, but rather under the auspices of the IWA.

reason" at all. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994). The common law tort of retaliatory discharge is a "limited and narrow" exception to this general rule. *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500 (2009). "To establish a claim for retaliatory discharge, plaintiff must allege that: (1) [s]he was discharged; (2) [her] discharge was in retaliation for legally-protected activities; and (3) [her] discharge contravened a clearly-mandated public policy of the State of Illinois." *Huang v. Fluidmesh Networks, LLC*, No. 16 C 9566, 2017 WL 3034672, at *6 (N.D. Ill. July 18, 2017) (citing *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000)). With respect to the third prong of this test, the Illinois Supreme Court has said that "public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981). In other words, Ruiz must allege that her discharge "violated a clear mandate of public policy because the reported wrongful conduct or unsafe condition affected the health, safety or welfare of Illinois residents as a whole." *Sutherland v. Norfolk S. Ry. Co.*, 356 Ill. App. 3d 620, 627 (2005). Unlike retaliatory discharge under the IWA, disclosure to a government agency is not a required element for common law retaliatory discharge. *Cf. Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992) (omitting disclosure to a government agency as an element for retaliatory discharge). As such, "[t]he great majority of courts interpreting Illinois law hold that an employee who reports unlawful conduct to an employer is protected under the tort of retaliatory discharge." *Belline v. K-Mart Corp.*, 940 F.2d 184, 187 (7th Cir. 1991). LabCorp's argument that Ruiz's common law retaliation claim must fail because she did not make her report to the government or a law enforcement agency is thus misplaced.

6

However, Ruiz's claim fails for a different reason: she conflates reporting a breach of company policy that Illinois law enables with reporting conduct that constitutes a breach of Illinois' "clearly-mandated public policy." *Huang*, 2017 WL 3034672, at *6. Ruiz claims that because of her and her former coworkers' jobs as phlebotomists, coming to work under the influence of drugs or alcohol repeatedly were "significant violations of [LabCorp's] rules" and "serious matters," Doc. 22 at 12, and could "[involve] serious privacy and health concerns," therefore making her allegations of co-workers behaving in such a way consistent with Illinois public policy, Doc. 1 ¶ 31. But Ruiz's vague gestures at public health are not based "in the State's constitution and statutes" or in Illinois' "judicial decisions." *Palmateer*, 85 Ill. 2d at 130. Although Ruiz's complaint would pass muster if she alleged that she reported violations of criminal statutes or health and safety standards, *see id.* at 132–33 ("Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy." (quotations omitted)); *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 509–10 (1985) (employee stated claim for retaliatory discharge when he reported violations of federal radioactive waste regulations), Ruiz only points to the Cannabis Regulation and Tax Act, Medical Cannabis Program Act, and the Illinois Human Rights Act as setting forth public policies that her coworkers violated. Although these laws *permit* employers to issue drug use policies that are stricter than Illinois law, they do not *require* them to do so. See 410 Ill. Comp. Stat. 705/10-50 ("Nothing in [the Cannabis Regulation and Tax Act] shall prohibit an employer from adopting reasonable zero tolerance or drug free workplace policies . . . ."); 410 Ill. Comp. Stat. 130/50(a) ("Nothing in [the Medical Cannabis Program Act] shall prohibit an employer from adopting reasonable regulations concerning . . . the use of medical cannabis."); 775 Ill. Comp. Stat. 5/2-104(C)(3) ("[Pursuant to the Illinois Human Rights Act an] employer

7

may require that employees behave in conformance with the requirements established under the federal Drug-Free Workplace Act of 1988 and the Drug Free Workplace Act[.]"). Accordingly, violations of LabCorp's corporate drug use policy do not necessarily equal violations of Illinois public policy because the statutes to which Ruiz pointed permissively allow employers to prohibit employees from drug use, not mandatorily impose such a restriction. However, because the Court dismisses this claim without prejudice, Ruiz can try again to identify a public policy her former coworkers violated and that she reported to LabCorp.

Moreover, in arguing that she reported violations of Illinois public policy, Ruiz erroneously relies on legal authorities that involve reports of criminal behavior like a manager's theft, *see Belline*, 940 F.2d at 188, or assault, battery, and criminal sexual abuse, *see Corral v. UNO Charter School Network, Inc.*, No. 10 C 3379, 2013 WL 1855824, at *11 (N.D. Ill. May 1, 2013), or potentially non-criminal but obviously hazardous actions that create immediate public safety concerns, *see Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 673 (7th Cir. 2008) (finding that shipping company could be held liable for tort of retaliatory discharge when seaman was fired after reported shipmates for excessive drunkenness and cocaine use). While condoning or failing to punish drinking, smoking, or firearms possession at work may be a bad business practice, Ruiz does not allege that the alleged acts violate any laws or standards. She likewise fails to elaborate on how an inebriated phlebotomist poses a risk to the Illinois public, such as any privacy or health concerns that might arise. *Long v. Commercial Carriers, Inc.*, 57 F.3d 592, 595 (7th Cir. 1995) (constructive discharge applies against employer when whistleblower reports conduct that would have a "wide reaching impact on the public").

Accordingly, the Court dismisses Count III without prejudice.

### III. Promissory Estoppel (Count V)

Finally, Ruiz brings a claim for promissory estoppel based on LabCorp's promise to not retaliate against employees who report misconduct. In an employment dispute, "promissory estoppel requires proof of the following: (1) an unambiguous promise of employment communicated from the employer to the employee; (2) reasonable reliance on the promise of employment by the employee; (3) the reliance was expected and foreseeable by the employer; and (4) the reliance was to the employee's detriment." *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999). Ruiz argues that certain statements in the Code constitute unambiguous promises, such as the Code's statements that "[we] must all work to take prompt and consistent action against violations of this Code or applicable law," Doc. 12-1, at 4, and that "LabCorp prohibits retaliation in any form," Doc. 12-1, at 5. Ruiz contends that she reasonably relied on those promises when she reported coworkers for breaching the Code. LabCorp argues that because the company says the Code is "intended to serve as a guide" to LabCorp employees, "it does not contain a promise clear enough that an employee would reasonably believe that an offer had been made." Doc. 23 at 8.

Language stating that an issuer has the discretion to revise a policy manual or code of conduct means that the policy does not create sufficiently definite promises for the purpose of promissory estoppel. *See Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 960–61 (N.D. Ill. 2017) ("[T]he context of the policy manual, which includes a provision allowing CCC to modify or amend this Policy at any time, provides additional support that the manual does not provide specific, unalterable promises." (quotations omitted)). Nor does broad language committing the policy's issuer to a certain ethical standard, without more definite terms, create "a clear promise regarding the terms of employment" on which an employee could reasonably rely.

9

*Talanda v. KFC Nat'l Mgmt. Co.*, 863 F. Supp. 664, 669–70 (N.D. Ill. 1994). However, when a policy manual unambiguously dictates that an employer will follow specified procedures before taking certain actions—such as allowing a grievance appeal process for adverse employment actions—employees may rely on those promises to bring a claim for promissory estoppel. *See Perman v. ArcVentures, Inc.*, 196 Ill. App. 3d 758, 765 (1990) (statement within code of conduct created explicit promise when it provided that "discharges must be approved in advance . . . and are subject to employee appeal through established grievance procedures."). In addition, if a manual distinguishes what the company considers as "grave offenses" that would warrant an "immediate dismissal" from those that are not subject to such measures and provides procedural controls against terminations, such explicit and detailed provisions can constitute unambiguous promises on which employees may reasonably rely. *See, e.g.*, *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490 (1987).

The Code at issue here states that it is "intended to serve as a guide to help [LabCorp] make the right choices and decisions consistent with the highest ethical standards." Doc. 12-1 at 3. The Code's use of the word "guide" and its purpose of helping LabCorp "make the right choices" suggest that the Code is not an unambiguous promise that LabCorp will strictly abide by the policies it sets out therein. *See Condon v. Am. Tel. & Tel. Co.*, 210 Ill. App. 3d 701, 708 (1991) (holding that policies contained in an employee guide are "commonly understood to be a flexible framework for operational guidance, not a perpetually binding contractual obligation"), *partially abrogated on other grounds by Doyle v. Holy Cross Hosp.*, 186 Ill. 2d 104 (1999). Moreover, the Code explicitly describes itself as a "flexible framework" about what employees should do, further diminishing the reasonableness of any potential reliance on the policies contained therein. Doc. 12-1 at 4 ("Because the Code cannot address every situation that will

10

arise, it is important that we have a way to approach a new question or concern."); *cf. Columbia Coll. Chicago*, 299 F. Supp. 3d at 961 ("[T]he broad statements in CCC's policy manual are not the type of unambiguous promises that can support a promissory estoppel claim."). Although the Code states that it prohibits retaliation and urges employees to "all work to take prompt and consistent action against violations of this Code or applicable law," Doc. 12-1 at 4, it does not define specific processes to protect employees from retaliation, contain any grievance procedures in case of negative employment treatment, or set out any specific consequences for retaliatory actions, which are distinctive features that would elevate a broad commitment to a certain policy to an enforceable promise. *See Duldulao*, 115 Ill. 2d at 490 ("[T]he document entitled 'Employee Handbook' created an enforceable right to the particular disciplinary procedures described therein."); *Perman*, 197 Ill. App. 3d at 765 (employee manual created enforceable promises when it stated that "discharges must be approved in advance . . . and are subject to employee appeal through established grievance procedures" and set out a policy that the employer would "assure every employee of the right of appeal, through an established grievance procedure from an unfavorable decision"). LabCorp's language to which Ruiz points that the company prohibits retaliation in any form and encourages internal reporting only demonstrates a broad commitment to a general principle of prohibiting retaliation. Without more explicit guarantees, LabCorp's Code does not serve as a source of unambiguous promises upon which Ruiz could have relied to create a contractual agreement.

Accordingly, the Court dismisses Ruiz's promissory estoppel claim without prejudice.

## CONLUSION

For the foregoing reasons, the Court grants LabCorp's motion to dismiss [10]. The Court dismisses Ruiz's IWA claims (Counts I and II) with prejudice. The Court dismisses her common

law retaliatory discharge, breach of contract, and promissory estoppel claims (Counts III, IV, and V) without prejudice. Ruiz may file an amended complaint by December 20, 2024, if she is able to do so in accordance with this Opinion.

Dated: November 19, 2024

_____
SARA L. ELLIS
United States District Judge